IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Timothy A. Jackson, ) | Civil Action No.: 8:09-1328-RBH-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| FUJIFILM Manufacturing USA, Inc., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the defendant's motion for summary judgment [Doc. 75] pursuant to Federal Rule of Civil Procedure 56, as well as plaintiff's response motion for summary judgment [Doc. 78]. The plaintiff, who is proceeding *pro se*, has pled claims for a failure to accommodate and for retaliation pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq*.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

The defendant manufactures a variety of imaging and information products including pre-sensitized printing plates, color negative paper, videotape, x-ray film and Quicksnap one-time-use recyclable cameras. (Thomas Aff. ¶ 11.) The defendant hired the plaintiff on July 24, 1995 as a Manufacturing Technician in K Plant which produces color photographic paper. (Thomas Aff. ¶ 12; Ex. 4 to Pl. Dep.) At that time, the plaintiff disclosed to the defendant that he had suffered a fractured left hip in a 1991 motor vehicle accident, and that he had fractured his left femur in a 1993 motor vehicle accident. (Pl. Dep. at 62.)

In January 2006, the defendant announced that it was closing certain plants, and discontinuing the original PS plant line due to decreased demand. (Thomas Aff. ¶¶ 28, 29; Ex. 14 to Pl. Dep.) All individuals located in the impacted plants, including the plaintiff, were

eligible to receive a severance package or they could choose to remain with the company and seek another position through the Workforce Reassignment Policy. (Thomas Aff. ¶ 30; Ex. 13 to Pl. Dep.) Under the Workforce Reassignment Policy, each associate who opted not to leave the company with severance was put on the Overstaffing List. (Thomas Aff. ¶ 31.)

The plaintiff opted to remain with the defendant after the plant closings and agreed to be reassigned to an open position pursuant to the Career Enhancement Program (Thomas Aff. ¶¶ 36, 40.) Approximately 200 associates accepted the severance and approximately 60 associates were placed on the Overstaffing List. (Thomas Aff. ¶ 38.) The plaintiff opted to remain with the defendant after the plant closings and agreed to be reassigned to an open position pursuant to the Career Enhancement Program. (Thomas Aff. ¶¶ 36, 40.)

The plaintiff alleges that, in May 2006, he complained to the defendant that he had a "permanent physical impairment to [his] left hip, leg, and knee." (Pl. Resp. at 3.) The plaintiff claims that his impairment "causes [his] walking, standing, lifting, bending, sitting, climbing, stooping, and twisting to be limited and restricted." *Id*. The plaintiff remained in his job as a team leader performing all job requirements during the defendant's decommissioning process, through August 16, 2006. (Pl. Resp. at 5.)

On August 21, 2006, the defendant reassigned the plaintiff pursuant to the Workforce Reassignment Policy to the position of Coating Technician in K plant. (Thomas Aff. ¶ 40.) Pursuant to the Workforce Reassignment Policy, the plaintiff was consolidated to the lowest level job in his particular job group so he would be eligible for the most positions. *Id*. ¶ 37. The defendant contends that the Coating Technician was similar to the position that he held prior to his promotion to Lead Technician in October 1999. (Thomas Aff. ¶ 40.) The plaintiff contends that it was, in fact, more physically demanding.

The plaintiff applied for an open CCR/Team Leader position on August 23, 2006 (Thomas Aff. ¶ 42.) The defendant interviewed five candidates for the position and, after an assessment of the qualifications of all of the applicants, selected Harry Heinz ("Heinz")

for the CCR/Team Leader position based on his advanced leadership skills and experience. (Thomas Aff. ¶ 43.)

On December 9, 2006, the plaintiff claims that he hurt his back while lifting a container. (Pl. Resp. at 3.) The defendant communicated with the plaintiff's physicians in an attempt to identify a job that he could perform with or without reasonable accommodation. (Thomas Aff. ¶ 48.) The plaintiff remained out of work through April 16, 2007. (Thomas Aff. ¶ 55.) During this time, the plaintiff's physician instructed that he was only able to perform sedentary work and that his restrictions were temporary. (Pl. Aff. ¶ 50.) The defendant did not have any sedentary positions available at the time. (Thomas Aff. ¶ 51.) Instead, the defendant provided the plaintiff a reasonable accommodation in placing him on an extended leave of absence during which the plaintiff received Short Term Disability and the defendant paid him his full salary through the salary continuation program. (Thomas Aff. ¶ 47.)

The defendant posted a second CCR/Team Leader position on March 5, 2007 while the plaintiff was out on medical leave. (Thomas Aff. ¶ 56.) In the defendant's judgment a Mike Norman was the most qualified applicant for the position. (Thomas Aff. ¶ 60.)

On May 13, 2007, the plaintiff allegedly aggravated his back and left leg while lifting a container and went out on workers compensation. (Thomas Aff. ¶¶ 62, 63.) The defendant again engaged in an interactive process with the plaintiff's physicians in an attempt to identify a job that he could perform with or without reasonable accommodation. (Thomas Aff. ¶¶ 53.). The defendant ultimately placed the plaintiff on an extended leave of absence during which the defendant continued to provide his health benefits (Thomas Aff. ¶ 68.) In all, the defendant kept the plaintiff on the rolls as an employee for over two years in order to receive health benefits despite the fact that he did not actually work during that same time period. (Thomas Aff. ¶ 70.)

Approximately two years prior to his separation from the defendant, on June 25, 2007, the plaintiff filed a charge of discrimination in which he alleged discrimination based on disability and retaliation ("First Charge"). (Thomas Aff. ¶ 70; Ex. 3 to Pl. Dep.) On

3

December 10, 2009, Jackson filed a second charge of discrimination based on disability, age and retaliation ("Second Charge").

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The plaintiff brought this action *pro se*. This fact requires that his pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

### MOTION FOR SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue

of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

The facts of this case are unwieldy. The plaintiff has submitted two dense accounts with numerous dates, names, job titles, and events. His efforts in connecting those facts to prevailing legal principles has been significantly less pronounced. The Court has done its fairest to make some organizational and analytical sense of it all.

The defendant views the plaintiff's allegations as having accused it of failing to accommodate the plaintiff's disability because the defendant did not select him for one of two sedentary positions: an August 16, 2006 CCR/Team Leader position and a March 5, 2007 CCR/Team Leader position. The plaintiff, by contrast, makes a more robust claim that the following positions were vacant in 2006 or 2007 but he was not assigned to them, regardless of any specific request or application he might have made: (1) "Y-Process position"; (2) one of two "M/CCR Team leader positions"; (3) "X-Plant Team leader position"; (4) a "vacant Planner position"; and (5) a "vacant Supervisor position."[1] (Pl. Resp. at 4; Sur. Reply at 4, 5, 7.) It does not appear necessary that the plaintiff have actually applied for specific and vacant positions, so long as he had otherwise requested accommodation and the defendant was aware of the vacancy, present or future. *See Lara v. State Farm Fire & Cas. Co.*, 121 Fed. Appx. 796, 802 (10th Cir. 2005). Accordingly, the Court will not necessarily limit its analysis to the CCR/Team Leader vacancies to which the plaintiff may have specifically applied, although the evidence itself may ultimately prove to greatly constrain the efficacy of the plaintiff's factual contentions.[2]

---

[1] The parties have not used identical titles to describe the various positions at issue. The undersigned has strained to speak of them accurately.

[2] The parties dispute over the positions at issue is further complicated by the defendant's contention that the plaintiff is limited to arguing only discriminatory acts allegedly arising after December 2006. The defendant emphasizes that in the plaintiff's Charge of Discrimination, filed with the EEOC, he represents that the first incident of discrimination did not occur until December 2006. (Ex. 3 to Pl. Dep.) EEOC complaints, however, "should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph v. Ohio Dept. of Youth Services*, 453

The Court characterizes the relevant opportunities for accommodation as follows:

1. Requests for accommodation in May and June 2006 for reassignment to any of the above-identified vacant positions (Pl. Sur-reply at 6-7);[3]

2. The plaintiff's application in August 2006 for a vacant CCR/Team Leader position;

3. The December 12, 2006 request for a medical leave of absence after the plaintiff strained his back at work;

4. The March 5, 2007 CCR/Team Leader vacancy.

Each will be addressed in turn.

To establish a failure-to-accommodate claim, a plaintiff must show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001).

### A. Requests for accommodation in May and June 2006 for reassignment to certain vacant positions

As stated, the plaintiff contends that he should have been reassigned to a "Y-Process position"; one of two "M/CCR Team leader positions"; an "X-Plant Team leader position"; a "vacant Planner position"; and a "vacant Supervisor position," based on a

___

F.3d 724, 732 (6th Cir. 2006) (quotations omitted). Further, events the "EEOC could reasonably be expected to investigate" are "not beyond the scope of the EEOC complaint." *Id*. It appears that this is principally true when a continuing violation is alleged. *See id.* Although the plaintiff, in fact, alleged a continuing violation on his EEOC charge, (Ex. 3 to Pl. Dep), for purposes of exhaustion of allegations of discrimination (which is the defendant's essential argument), courts have generally found that a "denial of a request for accommodation constitutes a *discrete act* and is not part of a continuing violation." Rothstein v. Kemps, LLC, 2010 WL 1995397, at *6 (D. Minn. 2010) (emphasis added); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Sunada v. Clark County School Dist.*, 2010 WL 1252686, at *5 (D. Nev. March 24, 2010). Out of an abundance of caution, however, the Court would not decline to consider alleged incidents of a failure to accommodate prior to December 2006.

[3] The defendant's view of the chronology of various job vacancies departs from that of the plaintiff's. For purposes of this motion, however, the Court will interpret the plaintiff's claims as he apparently elects to frame them.

request for accommodation, sometime in May and June 2006. (Pl. Resp. at 4; Sur. Reply at 4, 5, 7.) He complains that he was instead assigned to a Darkroom C-Process (identified by the defendant as "Coating Technician" (Thomas Aff. ¶ 40)) job, in August 2006, which he claims was more strenuous than his former positions as M/CCR Team Leader. (Pl. Resp. at 8; Caron Aff. ¶¶ 3, 4, 6.)

Initially, there is a problem with the plaintiff's evidence as to whether the defendant was on notice of any request for accommodation by the plaintiff, prior to August 2006. First, the plaintiff has not actually produced any evidence that he self-identified as disabled to the defendant or otherwise requested an accommodation of his alleged disability prior to that point. He has proclaimed as much. (See Pl. Resp. at 3-4; Pl. Sur-reply at 5-6.) Specifically, the plaintiff contends that in May and June of 2006 he explained, to no less than 21 people, that he had a "permanent physical impairment disability" to his left hip, leg, and knee and that he requested reassignment to the above-identified positions. (See Pl. Resp. at 3-4; Pl. Sur-reply at 5-6.) But the evidence he cites does not support it. (See Pl. Exs. J, K, L, O, P.) The documents identified are principally business records of the defendant related to issues of disability in *2007*. *See id.* Those documents say nothing about claims of disability or requests for accomodation in 2006. The only materials which reflect such incidents are handwritten notes, ostensibly prepared by the plaintiff, on small notepad sheets. (See Pl. Ex. K, L.) These items are hearsay, *see* Fed. R. Evid. 801, 802, or otherwise non-authenticated or explained and not properly considered at summary judgment, *see* Fed. R. Civ. P. 56(e). As far as the Court can determine, the plaintiff has not identified the author of the notes, when they were transcribed, or under what circumstances they were prepared. There is no indication that they were written extemporaneously to the events they describe. (See Pl. Ex. K, L.) For all the Court has been informed, they could be a summary prepared by the plaintiff in anticipation of summary judgment. They will not be considered. The plaintiff may have said something concerning the matter in his

8

deposition but he has not cited to it. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a litigant's arguments on summary judgment. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.1994).

Moreover, the defendant's general awareness of the plaintiff's physical impairments, even from the time of his initial hire, does not trigger the duty to accommodate. *See Shiflett v. GE Fanuc Automation Corp.*, 151 F.3d 1030, 1998 WL 386116, at *3 (4th Cir. June 19, 1998). "[I]t is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9 app. Critically, "where the employee is performing the job satisfactorily, as was [the plaintiff] during most of his employment, and where the employee will not acknowledge the need for or request an accommodation, or let the employer know that an accommodation is insufficient, the employer cannot be required to guess or read the employee's mind." *Shiflett*, 1998 WL 386116, at *3.

Simply because the defendant knew that the plaintiff had suffered permanent injuries in a car accident, it had "no duty to inquire further." *Id*. In fact, as the Fourth Circuit has warned, "Further inquiry would . . . come dangerously close to violating the ADA, which directs that an employer 'shall not make inquiries of an employee as to whether . . . an employee is an individual with a disability, unless such examination or inquiry is shown to be job related and consistent with business necessity,' 42 U.S.C. § 12112(d)(4)(a)." *Id*.

Additionally, there is no evidence that the defendant would have been somehow aware that the Darkroom C-Process/ Coating Technician job, to which the plaintiff was reassigned in August 2006, would not have accommodated his alleged disability. First, the plaintiff is not entitled to the accommodation or reassignment of his choice. *See Corrigan v. Perry*, 1998 WL 129929, at *9 (4th Cir. March 24, 1998); 29 C.F.R. § 1630.9 app. Although the plaintiff claims to have asked for other positions in May or June of 2006, there is no evidence that he indicated that he *could not* perform the C-Process/Coating Technician job in that same time frame. In other words, how was the defendant to have

known? The record does not answer this rhetorical query. Just because the plaintiff would have preferred to have been accommodated differently does not make the defendant's choice improper, *see Corrigan*, 1998 WL 129929, at *9, nor does it prove that the actual accommodation offered was not a good faith response, *see E.E.O.C. v. Humiston-Keeling*, Inc., 227 F.3d 1024, 1026 (7th Cir. 2000), to a request for accommodation, which the Court has rejected that there was any evidence of in the first instance.

Second, there is no evidence that the plaintiff could not perform the C-Process/Coating Technician job without accommodation in August 2006. The defendant has submitted evidence that the C-Process/Coating Technician job was similar to the position that the plaintiff held prior to his promotion to Lead Technician in *October 1999.* (Thomas Aff. ¶ 40.) The plaintiff has responded by submitting some evidence that the August 2006 position might have demanded more than the M/CCR Team leader position, which he was promoted to in 1999 and held until his reassignment in 2006. (Caron Aff. ¶¶ 4, 6.) But, that evidence does not refute the defendant's proffer that the plaintiff had previously performed, prior to 1999, comparable work. (Thomas Aff. ¶ 40.) To the extent that is what the defendant believed in August 2006, – that the plaintiff had previously "perform[ed] the job satisfactorily . . . during most of his employment" – and there is no evidence to the contrary, "the employer cannot be required to guess or read the employee's mind." *Shiflett*, 1998 WL 386116, at *3. There is no evidence that the plaintiff's known impairments had worsened or somehow had disqualified him from essentially performing a job he had previously worked. There is no medical evidence as to his condition from May to August 2006, whatsoever, much less some which might have apprised the defendant that the plaintiff could not perform the C-Process/Coating Technician job.

Accordingly, the Court would recommend dismissal of the accommodation claim

regarding any alleged request prior to August 2006,[4] because there is no evidence such a request was made or that the defendant somehow failed to attempt to accommodate it by reassigning the plaintiff to a job he previously could perform.[5]

### B. August 2006 CCR/Team leader position

The plaintiff further claims that he should have been promoted to the August 16, 2006 CCR/Team Leader position as a reasonable accommodation for his alleged disability. The defendant principally contends that the plaintiff was not entitled to such an accommodation where more qualified applicants were present. A reasonable accommodation is an accommodation that would "enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities." 29 C.F.R. Pt. 1630.2(o) App. This includes reassignment to a vacant position. 42 U.S.C. § 12111(9)(B). Employers must make "reasonable accommodation," unless the employer can show that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A).

Critically, however, as a general rule, a disabled employee is not entitled to a reassignment over a more qualified applicant for the same position. *See E.E.O.C. v. Humiston-Keeling, Inc.*, 227 F.3d 1024, 1027-28 (7th Cir. 2000) ("A policy of giving the job to the best applicant is legitimate and nondiscriminatory. Decisions on the merits are not

---

[4] This includes consideration of any alleged vacancy in the Y-Process job. (Pl. Sur-reply at 6.) There is simply no evidence that the defendant was aware of any request for accommodation to this job in May 2006 or that the C-Process/Coating Technician job would not alternatively do, based on the information the defendant had concerning the plaintiff's physical limitations during the summer of that year. Accordingly a consideration of the relative qualifications as between the plaintiff and an Annette Murray, *id.*, for that job is not necessary.

[5] For these same reasons, the Court would reject the plaintiff's claim that the move of the plaintiff to the Online Mixing Process job in September 2006 was a failure to accommodate. (Pl. Sur-Reply at 10.) Again, although the plaintiff was still requesting reassignment to an M/CCR Team leader position, there is no evidence that the Online Mixing Process job was known to not accommodate his condition.

11

discriminatory. . . . the ADA does not mandate a policy of affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled person be given priority in hiring or reassignment over those who are not disabled . . . ." (quotations and citations omitted)). Although not every Circuit agrees, *see Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1164-68 (10th Cir.1999), and although the Fourth Circuit has apparently not addressed it directly, there is reason to believe the Fourth Circuit is inclined to the Seventh Circuit view, as expressed in *Humiston-Keeling*. *See E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001). In *Sara Lee*, the Fourth Circuit emphasized that the "ADA does not require employers to penalize employees free from disability in order to vindicate the rights of disabled workers." *Id*. A "contrary rule would convert a nondiscrimination statute into a mandatory preference statute, a result which would be both inconsistent with the nondiscriminatory aims of the ADA and an unreasonable imposition on the employers and coworkers of disabled employees." *Id*. (quotation omitted).

The defendant has put forward the following evidence that a Harry Heinz was the most qualified candidate for the August 2006 M/CCR Team Leader position:

- he was a college graduate with a degree in business management;
- he was honorably discharged from the military holding a top secret security clearance;
- he had management experience prior to working for the defendant;
- he had worked for the defendant for over 10 years;
- he had worked as a manufacturing supervisor for the defendant for over four years before he was reassigned due to the reduction in force; and
- he had held the exact position for which he was applying for two and a half years prior to being promoted to a supervisor.

(See generally Thomas Aff. ¶ 43 & Ex. 1 thereto.)[6] The plaintiff does not refute these qualifications and has specifically conceded that he has no personal knowledge of Heinz's education, qualifications, or background. (Pl. Dep. at 190.)

---

[6] As far as the Court can determine, the defendant has not actually established the specific experience and qualifications recounted above. It represents them in its brief and generally references them in Thomas' Affidavit.

12

Not to disparage the plaintiff, but the defendant emphasizes that the plaintiff, did not attend college (Jackson Dep. at 19); receive any degrees after high school, *id*.; serve in the military, *id*. at 27; have any experience as a supervisor prior to working for the defendant, *id*. at 29-32; and had not worked as a supervisor for the defendant as had Heinz.

The notes from the defendant's evaluation process ranked Heinz, first, and the plaintiff, third. Their respective summaries read as follows:

> Harry [Heinz] – High experience level. Very strong evidence skill present for leadership initiative, quality, and technical. Team Leader experience +4 years. Supervisor +4 years.
>
> Tim [Jackson] – Very strong process knowledge 3 startups/11 years. Initiative low. Seemed like most decisions were procedural, calling supervisor, group. Team Leader experience.

(Ex. 1 to Thomas Aff.)

The plaintiff has summarily responded that he had more experience in "CLP, CLN, Scram, Wet and Dry X-Ray, and FDA Certification for X-Ray equipment and a first responder." (Pl. Resp. at 6.) The plaintiff also contends to have had additional and relevant training. *Id.* The plaintiff, however, has not actually produced evidence creating issues of fact as to these additional qualifications, that they were more relevant than other considerations, or that Heinz did not have these or comparable qualifications.

More importantly, such determinations are the province of the employer. Federal courts "do not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); *Henson v. Liggett Group*, Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA."). In other ADA contexts, a plaintiff, to create issues of fact concerning incidents of disability discrimination,

13

must show that his qualifications were "demonstrably superior" to that of a competing applicant outside the protected class. *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 261-62 (4th Cir. 2006) (ADA failure to promote case). Whether this precise articulation is applicable in a failure to accommodate case, which is a distinct claim, does not appear resolved, in this Circuit. It seems clear, however, as a matter of law, that the plaintiff's thin rebuttal, here, as to the relative qualifications of Heinz, is not sufficient to allow a reasonable jury to conclude that the plaintiff was at all more qualified, demonstrably, slightly, or otherwise.

### 3. The December 12, 2006 request for a medical leave of absence after the plaintiff strained his back at work

The plaintiff next contends that his disability was further unaccommodated, when, in December 2006, he injured his back "performing a job in the CWP room at K-Plant due to [his] permanent known disability with [his] left hip, leg, and knee." (Pl. Sur-Reply at 10.) The plaintiff contends that he was forced to take medical leave because he had not been given an M/CCR Team leader position, open and available in October 2006.

The defendant has put forward evidence that it engaged in an interactive process, *see* 29 C.F.R. § 1630.2(o)(3), with the plaintiff's physicians in an attempt to identify a job that he could perform with or without reasonable accommodation. (Thomas Aff. ¶ 48.) The plaintiff remained out of work through April 16, 2007. (Thomas Aff. ¶ 55.) During this time, the plaintiff's physician instructed that he was only able to perform sedentary work and that his restrictions were temporary. (Pl. Aff. ¶ 50.) The defendant did not have any sedentary positions available at the time. (Thomas Aff. ¶ 51.) The plaintiff has not produced contrary evidence that any were. Instead, the defendant provided the plaintiff a reasonable accommodation in placing him on an extended leave of absence during which the plaintiff received Short Term Disability and the defendant paid him his full salary through the salary continuation program. (Thomas Aff. ¶ 47.)

14

Such leaves of absence are reasonable accommodations, except in circumstances not apparent here. *See, e.g., Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir.2001); *García-Ayala v. Lederle Parenterals*, Inc., 212 F.3d 638, 649-50 (1st Cir.2000); *Cehrs v. Nw. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781-83 (6th Cir.1998); *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir.1998); *see also* 29 C.F.R. pt. 1630, app. at 356 (providing that a reasonable accommodation could include "unpaid leave for necessary treatment"). Accordingly, no reasonable jury could find any failure to accommodate due to the December injury.

### 4. The March 5, 2007 CCR/Team Leader position

Lastly, the plaintiff contends that the defendant failed to inform him, while he was on leave, of a vacant M/CCR Team Leader position, open in March 2007. (Sur-reply at 12.) The individual selected for that position was a Mike Norman. The defendant represents that it did not conduct another application for this process but instead relied on its evaluation for the August 2006 CCR Team Leader position.

To the Court, this is the closest call. As discussed, the Court believes that it was not necessary for the plaintiff to have actually applied for the position. Once he had made a request for accommodation to a sedentary position, the defendant's duties were implicated in that regard. *See Lara*, 121 Fed. Appx. at 802. Notwithstanding, the defendant has put forward evidence that Norman was more qualified and rated higher than the plaintiff (Thomas Aff. ¶¶ 60-61 & Ex. 1 thereto) and that the plaintiff admits that he has no personal knowledge of Norman's skill level and background (Pl. Dep. at 238). As a result, the Court would be disinclined to conclude that, as a matter of law, the defendant's decision to pick a more qualified candidate was a failure to accommodate. The plaintiff has simply not met

15

his burden to create issues of fact as to the relative qualifications between himself and Norman.[7]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 75] be GRANTED and all claims dismissed *with prejudice*.

IT IS SO RECOMMENDED.

                                        s/Bruce H. Hendricks
                                        United States Magistrate Judge

June 18, 2010
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page**

---

[7] The plaintiff also pled a claim for retaliation. In his response and sur-reply briefs, however, he makes no argument concerning it, as far as the Court can determine. The Court would consider it abandoned, in spite of the undersigned's attempts to liberally construe and consider the submissions of the plaintiff. In fact, the Court feels that it has stretched to the limits of its discretion to entertain the facts as presented by the plaintiff in regards to his accommodation arguments, which comprise the universe of his briefs. To do even more, and attempt to force these same allegations into the retaliation framework, seems improvident. The defendant made its Rule 56 showing regarding retaliation and the plaintiff has elected not to rejoin. Whether for abandonment or a failure of evidence under the applicable rule, the claim should be dismissed.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).